RICHARD McAllister et al.

*v.*

CITY OF ATLANTIC CITY.

[Submitted May 9th, 1919. Determined May 16th, 1919.]

1. The absolute inability of a defendant to perform his undertaking at all, when called upon by a court to do so, precludes a decree against him for specific performance.

2. Specific performance of a covenant in a deed granting to a city land for park purposes that the park would not be obstructed will not lie where the city has by contract bound itself not to condemn the pier which is claimed to be an obstruction until it condemns other piers, and complainants have acquiesced in that agreement.

3. Where an answer to a bill for specific performance shows a defence to the primary relief prayed for, it will not be stricken out on motion even though the alternative relief prayed for might be granted in the pleadings.

4. Where a deed granting land to a city for park purposes contains a covenant, not forming part of the limitation in the deed, that the park shall remain unobstructed, the land would not revert for breach of covenant because at one end of the park there was a pier, but at most an action for damages might lie.

On bill for relief. On hearing on motion of complainant to strike out answer of defendant.

*Mr. Clarence L. Cole,* for the complainants.

*Mr. Joseph B. Perskie,* for the defendant.

LEAMING, V. C.

I am convinced that complainants' motion to strike out defendant's answer must be denied.

1. The bill seeks to compel defendant municipality to specifically perform a covenant contained in a deed of conveyance made to the municipality pursuant to chapter 93 of the laws of 1894. *P. L. 1894 p. 146.* The covenant is to the effect that the land conveyed, which land was conveyed for park purposes, should be forever "open and unobstructed." What is known as Heinz Pier crosses the outer corner of the premises conveyed; to that extent the land conveyed to the municipality is not open and unobstructed. The facts set forth in the answer are substantially the same as those contained in the plea filed in *McAllister* v. *Atlantic City, 90 N. J. Law 93; affirmed, 91 N. J. Law 701.* Among other things, it avers that it is impossible for the municipality to comply with the covenant at this time. The absolute inability of a defendant to perform his undertaking at all, when called upon by a court to do so, obviously prevents a decree against him for its specific performance. *Pom. Cont. (Spec. Perf.) (2d ed.)* § *293.* But this impossibility of performance, as set forth in the answer, appears to have arisen, in part, at least, from an agreement which the city has made with the owner of the pier. The answer discloses that the city is bound by an agreement made by it with the owner of the pier, to the effect that it would not interfere with the possession of the pier by its owner in its present location, except by condemnation proceedings instituted against all piers on the ocean front in pursuance of a scheme for the acquirement by the city of all lands within the beach front park; the answer avers that four other piers exist on the ocean front and that funds cannot be procured for their acquirement by reason of the statutory limitation of the amount of the city's indebtedness. This agreement, touching uniform condemnation of all piers, the answer asserts, was made at the time complainants' deed to the city was

made; at that time, according to the answer, complainants had petitioned the city to move the ocean front boardwalk oceanward, to the end that the land between the old and new locations of the boardwalk could be utilized by complainants for commercial use; that the inner end of Heinz Pier then occupied a part of this intervening land, and to accomplish the end then desired by complainants, it was necessary to procure the removal of that part of the pier and have it connected with the boardwalk in its new location; that the agreement, contemplating that the part of the pier oceanward of the new location of the boardwalk should not be disturbed except by carrying out a general scheme of condemnation of all piers, was rendered necessary to accomplish the end then sought by complainants and was executed with complainants' knowledge and enured to their benefit; that the removal of the boardwalk oceanward and the removal of the pier from the intervening space, and the execution of the agreement touching the remaining part of the pier, were all parts of one plan, and the resulting benefits to flow therefrom to complainants afforded the real consideration of the deed made by complainants to the city. These averments of the answer are not entirely specific touching the extent complainants participated in and encouraged the execution of the pier agreement; but I think that the averments taken together may be said to disclose sufficient acquiescence of complainants in the execution of the agreement as an essential part of the general plan enuring to their benefit to equitably afford a bar to their now seeking relief inconsistent with the agreement. If complainants' deed to the city was in fact made to procure the removal of the boardwalk oceanward with knowledge of the fact that its removal and the removal of the inner end of the pier was to be accomplished through or in part through the instrumentality of the agreement referred to, it seems to me clear that they cannot now equitably seek to compel the city to pursue a course of action in repudiation of that agreement. It follows that even though the impossibility of performance asserted by the answer may be said to be wholly predicated upon the agreement of the city not to condemn the pier here in question without also condemning the other piers, the impossibility of performance must be deemed ab-

solute, so far as complainants are concerned, since complainants' acquiescence in the agreement for the purpose stated must be regarded as an equitable bar to relief in behalf of complainants which, if granted, would compel the city to violate the agreement.

Whether in the absence of acquiescence on the part of complainants in the pier agreement referred to this court can properly compel a municipality to specifically perform a covenant, the performance of which will be violative of another covenant made in good faith by the municipality, need not be here considered. But it would seem that any suggestion that the city should not have thus bound itself by agreement necessarily enters the field of discretion which the legislative act confers upon the city, since no time is specified in the act within which the general scheme shall be accomplished; it, accordingly, must be here assumed that the agreement was made by the city to facilitate the ultimate accomplishment of the general scheme.

2. The bill also prays that in default of a decree for specific performance of the covenant contained in complainants' deed, a decree may be made declaring the deed to be null and void.

As already stated, the deed from complainants to the city was made pursuant to the legislative act of 1894. *P. L. 1894 p. 146.* Section 3 of that act authorizes the city to acquire the lands by purchase or condemnation and in no way forbids the acquisition of an absolute estate by the city, but requires that the lands so acquired shall be devoted "exclusively to public use as a public park or place for public resort and recreation, and to keep the same forever open and unobstructed for such public use." Section 5 of the act authorizes the city to accept from landowners a dedication of the land for the uses and purposes named in section 3, and in so doing to agree with the owners to change the location of the boardwalk so that the owners may secure the benefit of the territory intervening between such old and new boardwalk locations.

The deed of conveyance from complainants to the city recites, among other things, that the city is proceeding under the act above referred to to establish a public park and is to remove the boardwalk oceanward to the inner line of the park tract and then

expresses as a consideration for the conveyance one dollar and the benefits to be derived by the vendors by the laying out of the park and building the boardwalk and the further consideration that the vendors'.land will not be condemned. Its words of grant are:

"Give, grant, bargain, sell and convey to the said party of the second part, and its successors, all their, and each of their right, title and interest in and to the above described tract."

Its *habendum* and *tenendum* is:

"To have and to hold the said premises with all and singular the appurtenances, unto the said party of the second part, and its successors, for and only for use as a public park or place of resort and recreation, giving to said party of the second part, and to its successors, however, the right to construct, reconstruct, repair, complete and maintain upon the land so conveyed along the interior or inland line of said park or place for public resort as established as aforesaid, an elevated public boardwalk, in accordance with the provisions of said act, but subject to the following conditions and restrictions: That no railroad nor street railway shall ever be constructed, operated or maintained over, upon or across any portion of the premises hereby granted and conveyed, and that the said land shall never be used for any railroad purposes or uses whatever."

Then follows a series of covenants on the part of the municipality. The city covenants, first, to maintain the newly-located boardwalk. Second, to permit the complainants to connect their lands and properties with the new boardwalk by proper approaches. Third, that when by accretions high-water mark shall have receded to a point three hundred feet to again remove the boardwalk three hundred feet oceanward, and when so removed the dedicated land within or landward of such new location shall be released from the dedication and revert to complainants, their heirs and assigns. Fourth,

"That the lands hereby granted and dedicated to public use shall forever be and remain open, so that the view oceanward from the said elevated public walk erected and to be erected as above mentioned shall be free, open and unobstructed, and that no use shall be made of the said land by the grantee, its successors or assigns, inconsistent with its use as a public park or place for public resort and recreation."

Complainants, accordingly, contend that the failure of the city to cause that portion of the pier which crosses the outer corner of the tract conveyed to be removed is in violation of the covenant above quoted, and seeks a decree declaring the grant null and void in the event of the failure of the city to comply with the covenant. It is urged that if the answer affords a defence to specific performance, it affords no defence to the alternative relief sought.

It seems obvious that if the answer affords a defence to the primary relief of specific performance sought by the bill, it cannot be stricken out on motion for that purpose, even though it should be thought that the alternative relief sought might be sustained on the pleadings.

But it may not be inappropriate to here suggest, without at this time determining, that complainants' remedy in the circumstances stated is not a decree declaring the grant null and void. It may be tentatively conceded that the estate granted is a determinable fee, and that as such the city's abandonment of the use of the land "as a public park or place of resort and recreation," would be operative to determine it. But the answer fully discloses that no such abandonment has occurred. The utmost that has occurred has been the failure of the city to free an outer corner of the land from the occupancy of the pier, and this pier, the answer avers, is necessary for purposes of health and recreation of the public, and is so used. But even conceding that the occupancy of this outer corner of the land by the pier for the purposes stated is violative of the covenant which the city has made touching its obligations to complainants, it does not follow that the breach of covenant in the limited respect stated, which covenant forms no part of the limitation expressed in the deed, is operative to divest the city's estate in the lands and cause the title to revert to complainants. *Camden, Atlantic and Ventnor Land Co.* v. *West Jersey and Seashore Railway Co. (New Jersey Court of Errors and Appeals), 105 Atl. Rep. 229.* If complainants have suffered appreciable damages through breach of this covenant the law courts would seem to be the appropriate tribunals for relief.

I will deny the motion to strike out the answer.