On December 15th, 1902, the complainant became the owner of an undivided one-half interest in certain premises on the beach front in Atlantic City, New Jersey, extending to the exterior line as fixed by the riparian commissioners. *Page 560 
In 1886 the structure now known as Heinz Pier was erected. As originally built, the landward end of the pier was within the lines of Massachusetts avenue, and extended diagonally across thelocus in quo. What is termed the inner pavilion was added to the pier in 1900. By "An act to enable cities in this state, located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front, to open and lay out a public park or place for public resort or recreation on and along the beach or ocean front of such city, and to purchase or condemn lands, property and rights therefor, and to preserve the same from obstruction or encroachment" (P.L. 1894; 1 Comp. Stat.p. 1075), Atlantic City was authorized to create a park oceanward of the boardwalk, as then existing or thereafter built.
In January, 1907, the complainant, his co-tenants, and other owners of land adjoining the boardwalk, presented to the city council of Atlantic City a petition signed by the owners of all land on the ocean front between Connecticut avenue and Maine avenue, stating "that by reason of the formation of land by accretion, the high-water line as it now exists is not less than three hundred feet oceanward from the present location of the sixty-feet-wide street upon which is erected the public boardwalk at the time of the execution by us, or our predecessors in title, of a certain deed to Atlantic City familiarly known as the easement deed, as made and delivered pursuant to an act entitled `An act to authorize cities in this state, located on or near the ocean,' c., approved April 6th, 1889, and the ordinances of Atlantic City passed in virtue of said act and its supplements and amendments.
"Petitioners further show that the land owned by them, as stated, comprises more than three contiguous squares, and they hereby petition your honorable body to move said boardwalk oceanward between the points herein named, from its present location to a point three hundred feet oceanward or such greater or less distance as the rights of your petitioner under said easement deed and public interest may require." *Page 561 
On April 22d 1907, the city council of Atlantic City passed a resolution as follows: "Be it resolved by the city council of Atlantic City that for and in consideration of a consent in writing, to be approved by the city solicitor, and streets, walks and drives committee, from H.J. Heinz Company, of Pittsburg, for the relocation of a boardwalk forty feet wide along the interior line of the beach front park, located by ordinance of April 10th, 1907, said location cutting through at that width the iron pier located at the ocean end of Massachusetts avenue, that the city of Atlantic City will not interfere with or disturb the present occupancy or possession of said company with said pier as now erected on lands owned or to be hereafter acquired by the city within the limits of said beach front park unless such interference or disturbance shall be by condemnation proceedings instituted against all piers on the ocean front in carrying out a scheme for the acquirement by the city for all lands within said beach front park, and that the mayor and city clerk be hereby authorized to sign such agreement."
The boardwalk was accordingly moved oceanward about three hundred feet, which resulted in the landward end of the pier being cut off and the pier shortened more than three hundred feet, the landward end being a considerable distance eastwardly from Massachusetts avenue.
On April 7th, 1907, the complainant and other owners of land along the Atlantic ocean made and executed to the city of Atlantic City a deed generally known as the park deed, in which, after several recitals, and describing by metes and bounds, the said park deed provided as follows:
"And whereas the said city has heretofore constructed and is about to reconstruct within the limits of the said park for a considerable distance along and near to the inland line so established an elevated boardwalk, and proposes hereafter to continue such construction along the entire line. Now, for the purpose of enabling the said city to use the lands lying oceanward from the inland line so established and so so be established, and within the boundaries above designated as a public park and place of resort and recreation in pursuance of the provision of the said act — This Indenture Witnesseth, That the parties of the first part, for and in consideration of the *Page 562 
premises and of the sum of one dollar lawful money of the United States of America, well and truly paid by the said party of the second part to the said parties of the first part, at and before the sealing and delivery of these presents — receipt of which is hereby acknowledged — and in consideration of the benefit and advantage to be derived by the parties of the first part, by the laying out of the said park within the boundaries aforesaid, and building said walk, and in consideration also that the lands of the said parties of the first part will not be condemned as is provided by the act of the legislature or ordinance above referred to have and by these presents do, for themselves and each of them, their heirs, successors and assigns, give, grant, bargain, sell and convey to the said party of the second part and its successors, all their and each of their right, title and interest in and to the above described tract of land and every part and parcel thereof, including such parts and parcels thereof as are, or may be covered by water, to have and to hold the said premises with all and singular the appurtenances, unto the said party of the second part, and its successors for and only for use as a public park or place of resort and recreation, giving to said party of the second part, and to its successors, however, the right to construct, reconstruct, repair, complete and maintain, upon the land so conveyed along the interior or inland line of said park or place for public resort as established as aforesaid, an elevated public boardwalk in accordance with the provisions of the said act, but subject to the following conditions and restrictions: That no railroad nor street railway shall ever be constructed, operated or maintained over, upon or across any portion of the premises hereby granted and conveyed, and that said land shall never be used for any railroad purpose or whatever. And the said party of the second part hereby covenants and agrees to and with the said grantors, parties of the first part, and to and with each and every one of them, and to and with their and each of their assigns, as follows: First, to maintain the said elevated boardwalk as now constructed or hereafter constructed or extending along the inland line of the land hereby conveyed as an open public walk, and to reconstruct and maintain said walk between the point of the line relocated as aforesaid; second, to permit the owners of property contiguous thereto lying inland from the line so established and marked to connect their and each of their lands and properties with such elevated boardwalk by building and maintaining proper approaches for this purpose on the inland side thereof; third, that whenever a formation of land by accretion shall occur within the bounds of the land hereby conveyed to such an extent that the high-water line of the ocean shall not be less than three hundred feet oceanward from the inland line so established, the grantee and its successors shall, upon the written request of the grantors, their heirs and assigns, owning not less than three contiguous city blocks of land hereby conveyed upon which such accretion may have formed, cause the elevated boardwalk erected thereon to be moved oceanward three hundred feet or any less distance that such owners and the party of the second part may agree upon, and whenever the said elevated boardwalk shall be *Page 563 
moved oceanward, by virtue of this provision, the inland line of the said park shall be moved oceanward to correspond therewith, and all the land hereby conveyed lying inland from the line so re-established shall be released from the dedication hereby made, and revert to the owners thereof, their heirs or assigns; fourth, that the lands hereby granted and dedicated to public use shall forever be and remain open so that the view oceanward from the said elevated public walk erected and to be erected as above mentioned shall be free, open and unobstructed, and that no use shall be made of the said land by the grantee, its successors or assigns, inconsistent with its use as a public park or place for public resort and recreation."
The deed was acknowledged by the several grantors on April 8th, 1907, and proven by the grantees on May 15th, 1908, and recorded on May 16th, 1908, in book 383, page 124, c.
Some time in August, 1924, during a severe storm, a barge was washed against the pier, and about one hundred and thirty-six feet of the pier was destroyed, of which break about fifty feet was landward of the exterior line as existed in 1878, and upon the land, extending between the ocean front of the McAllister land and said exterior line. At the time of the break the pier consisted of a floor decking twenty-nine and seventy-five hundredths feet in width, with a railing on each side. The pier, so far as the two pavilions and all else of it except the inshore end was in 1902, exactly as it was the time of its partial destruction, and has been there, except the inner end that has been cut off due to extending the boardwalk, from the time it was built to the said time (evidence complainant, pages 14 and 17), and that the Heinz Company were using the pier at the time of the break, just as they were when they were paying rent to the complainant, and there was no difference whatever in their treatment of the pier "to-day" from what it was during the period of payment of rent, during which time the complainant made no objection whatever to the fact that there were pavilions on the pier, or that they were using it just as they are using it "to-day." The words "to-day," evidently, meaning the time of the break.
On December 18th, 1924, the complainant filed his bill praying that the said "H.J. Heinz Company, its contractors, *Page 564 
officers, servants, agents and workmen be enjoined from performing, continuing or further proceeding with any work looking to the reparation or restoration of said pier or structure, and that said defendants be decreed to take down, destroy or undo any such work already done or performed.
That the continued existence of said pier or structure, and the use thereof for commercial purposes, be decreed to be inconsistent with the use of said land as a public park or place for public resort and recreation within the meaning of said act of the legislature, and a violation of the covenants contained in said grant, and the defendant, H.J. Heinz Company, enjoined from using the same for commercial purposes, and the defendant, city of Atlantic City, be enjoined from authorizing or permitting said structure to be so used."
An order to show cause, with restraint, was advised, upon the hearing of which, by consent, an order was made permitting the defendant to construct a twelve-foot passageway over the construction already erected at the "break" for the purpose of removing the valuable articles then in the outer pavilion, and otherwise continuing the restraint until the final hearing, which occurred on June 26th, 1925. The last brief was received by the court on September 22d.
At the hearing on the order to show cause, the defendant presented a riparian deed from the State of New Jersey, conveying to H.J. Heinz Company the "lands under water outside of the former riparian commission line of June 17th, 1876, now actually occupied by the aforesaid structure known as Heinz pier."
In the examination of this cause, and the making of the orders herein, McAllister's title has been accepted as extending only to the riparian line of 1876, that being the exterior line of the conveyance to him and his co-tenants.
In 1905 the court of errors and appeals, in Wm. Burkardt etal., defendants in error, v. H.J. Heinz Co., plaintiff inerror, 71 N.J. Law 562, affirmed a judgment of the Atlantic county circuit court in favor of the plaintiffs in a suit of ejectment describing the lands in question, whereupon an agreement was entered into between the complainant and defendant, *Page 565 
leasing the said land at a certain rental. This rental was paid until the defendant ascertained that a deed had been made to the city, when it ceased the payment of rent, insisting that McAllister had, by said deed, conveyed his title and interest to Atlantic City. Later, McAllister and his associates made application for a writ of mandamus to enjoin Atlantic City to procure title to the land within the limits of the "park," and to cause the pier to be removed therefrom — the city filed a plea, to which a demurrer was filed. This was overruled. McAllister
v. Atlantic City, 90 N.J. Law 93; affirmed, 91 N.J. Law 701.
McAllister and his co-tenant filed a bill in this court seeking to compel Atlantic City to specifically perform its covenant in the deed above recited, and that the land conveyed for park purposes should be forever "open and unobstructed." A motion to strike out defendant's answer was made and denied. McAllister
v. Atlantic City, 90 N.J. Eq. 357.
The cause proceeded to final hearing with the result that the following decree was entered:
"This cause coming on to be heard upon bill, answer, replication and proofs, before the Honorable Edmund B. Leaming, the vice-chancellor to whom the same had been regularly referred by the chancellor, in the presence of C.L. Cole, of counsel with the complainants, and Joseph B. Perskie, of counsel with the defendant, and the pleadings and proofs having been read and the arguments of counsel heard and considered, and it appearing that the city council of Atlantic City, being the governing body of said city, resolved to open and lay out along the beach or ocean front a public park or place for public resort and recreation, and to devote the lands within the limits of such park or place of resort to such use exclusively under and by virtue of an act of the legislature of the State of New Jersey, entitled `An act to enable cities in this state, located on or near the ocean, and embracing within their limits or jurisdiction any beach or ocean front to open and lay out a public park or place of public resort or recreation on and along the beach or ocean front of such city, or to purchase or condemn lands, property and rights therefor, and to preserve the same from obstruction *Page 566 
or encroachment,' approved April 26th, 1894; and it further appearing that the city council of said city for this purpose did, on the 8th day of October, 1899, duly pass an ordinance in the said city to lay out and open such park and to establish the interior or inland lines thereof; and it further appearing that the city council of Atlantic City, by ordinance approved April 10th, 1907, relocated said interior or inland line between the middle line of Connecticut avenue and a point in the west line of Maine avenue twenty-five and two-tenths feet northwardly of the south line of Pacific avenue, so that the interior or inland line of said park is now as follows: (description), and it further appearing that on the 8th day of April, 1907, of the tract described in the deed aforesaid, the complainants were the owners of a part of the land described in said deed as a tract of land in the westerly line of Rhode Island avenue and easterly line of Metropolitan avenue, and south of Oriental avenue, and running southwardly between parallel lines of said avenues to the exterior line established by the commissioners appointed under the authority of the act entitled `An act to ascertain the rights of the state and of riparian owners in the lands lying under the waters of the bay of New York and elsewhere in this state;' and it further appearing that in the deed by the complainants to the defendant under date of April 8th, 1907, there was provided among the several covenants the following designated as `Fourth';
"`Fourth. That the lands hereby granted and dedicated to public use shall forever be and remain open so that the view oceanward from the said elevated public park erected and to be erected as above mentioned shall be free, open and unobstructed, and that no use shall be made of the said land by the grantee, its successors or assigns, inconsistent with its use as a public park or place for public resort and recreation;'
and it further appearing that at the time the complainants made the conveyance described in the deed under date of April 8th, 1907, they, the complainants, petitioned the said city of Atlantic City to relocate the boardwalk; and it further appearing that at the time complainants conveyed said land to the defendant, to wit, April 8th, 1907, there was and still is on a part of said land and premises *Page 567 
what is commonly known as `Heinz Pier,' a structure of, approximately, forty feet in width and five hundred feet in length, extending oceanward from the boardwalk with two enclosed pavilions thereon, the outer or larger one being oceanward of the exterior line and not within the lines of said park, and the smaller one being inland of the said exterior lines and within the lines of said park, and no part of which is on the land which complainants conveyed to the city of Atlantic City; that only about one hundred feet of the said pier between the two pavilions crosses the part of the land which the complainants conveyed to the city; that the said pier, though privately owned, was and still is at all times open to free public use for the purpose of recreation; that the land conveyed by the complainants to the defendant under deed dated April 8th, 1907, is wholly maintained as a public park or place of recreation except in so far as the structure Heinz pier may be thought otherwise as to the extremely limited territory which it occupies; that there has been no abandonment of the park plan by the defendant; and it further appearing that prior to the date of the conveyance by the complainants to defendant, to wit, April 8th, 1907, the land oceanward of the boardwalk lying between Connecticut and Maine avenues (a distance of five contiguous blocks), had moved oceanward so that the high-water line of the Atlantic ocean was more than three hundred feet oceanward of the said sixty-feet-wide street known as the boardwalk, and the complainants and others, owners of more than three of said continguous blocks, petitioned the city council of said city to move the said boardwalk oceanword, and thereupon did enter into a solemn agreement with H.J. Heinz Company of Pittsburg, owners of the Heinz pier, that, in consideration of the relocation by the defendant of the boardwalk, forty feet wide along the interior line of the beach front, approved by ordinance April 5th, 1907, said location cutting through at that width the iron pier located at the ocean end of Massachusetts avenue, that if the defendant would not interfere or disturb the occupancy or possession of the said H.J. Heinz Company with the said pier as now erected on the lands owned or hereafter to be *Page 568 
acquired by the defendants within the limits of the beach front park, unless such interference or disturbance should be by condemnation proceedings instituted against all piers on the ocean front carrying out a scheme for the acquirement by the city of all lands within said beach front park; and it further appearing that there are at least five other parcels of land, to wit, Heinz pier, Garden pier, Steel pier; Young's old pier and Million Dollar pier, which piers and the land on which they stand, have, approximately, the value of $3,000,000, and that the defendant is unable to purchase or condemn the said lands; and it further appearing that there is no limitation of a determinable estate in the habendum clause in the deed by the complainants to the defendant; and it further appearing that complainants are not entitled to the relief prayed for.
"It is, on this 29th day of June, A.D. 1920, on motion of Joseph B. Perskie, of counsel with the defendant, by Edwin Robert Walker, chancellor of the State of New Jersey, ordered, adjudged and decreed that the defendant has not violated the covenants and conditions in the above-recited deed of conveyance set forth; that the complainants are not entitled to be restored to the free possession of the land described in their said deed or to have a reconveyance thereof; and that the complainants' said bill of complaint be dismissed, with costs of suit to be taxed."
I am bound by this decree. The testimony is undisputed that the use of this structure is the same as at the time of the previous suit, that the reconstruction will place the pier in and only in the same condition as at that time.
It was decreed that the defendant had not violated the covenants and conditions in the deed of conveyance, i.e., that the structure known as Heinz pier, or the use thereof, did not violate the covenants and conditions, and, being unchanged, it necessarily follows that the pier and the use thereof does not now violate them.
Much stress is made by the complainant that "the park is to be kept free, open and unobstructed."
It is to be noted that Vice-Chancellor Leaming in his decree specifically recited the condition that the lands shall *Page 569 
remain "open," c., and decrees that "the defendant has not violated the covenants and conditions thereinbefore recited."
A decree will be advised dismissing the bill.