CAMDEN, ATLANTIC AND VENTNOR LAND COMPANY, RESPONDENT, v. WEST JERSEY AND SEASHORE RAILROAD COMPANY ET AL., APPELLANTS.

Argued June 24, 1918—Decided November 18, 1918.

1. When land is conveyed to a railroad company "to have and to hold the same  *  *  .  *  for the purposes of the said railroad for and during the continuance of the said railroad, to their only use, benefit and behoof forever," the company takes a base or qualified fee therein, its estate, however, being determined only if and when its railroad shall have ceased to exist.

2. So long as the estate of the grantee, in a deed conveying a base or qualified fee, remains in him, no right of entry exists in favor of the grantor.

On appeal from the Supreme Court.

For the appellants, *Bourgeois & Coulomb*.

For the respondent, *John S. Westcott* and *Lewis Starr*.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.    This is an appeal from a judgment of the Supreme Court entered in an ejectment suit based upon a verdict directed for the plaintiff. The facts in the case were stipulated, and, of course, are not in dispute.

The *locus in quo* was conveyed by the Camden and Atlantic Land Company to the Camden and Atlantic Railroad Company by a deed of conveyance dated May 1st, 1871, and duly recorded. The West Jersey and Seashore Railroad Company is the successor in title to the Camden and Atlantic Railroad Company. The Camden, Atlantic and Ventnor Land Company, the plaintiff below, has succeeded to all the rights of the Camden and Atlantic Land Company (if any) in the lands embraced in the present controversy.

In April, 1916, the West Jersey and Seashore Railroad Company conveyed a certain portion of the premises to one Frank Ruffo, who entered into possession thereof. About the same time the company conveyed another portion of the land to one Armand Nichols, who entered into the possession of his moiety. Both of these parties were in possession of the respective parcels so conveyed at the time this suit was brought, the railroad company being then in possession of the remaining portion of the land.

The rights of the parties herein concededly depend upon the true construction of the deed of May 1st, 1871. The consideration for the conveyance was $450. The granting clause therein is as follows: "The party of the first part for and by these presents do grant, bargain, sell and convey unto the said party of the second part, their successors and assigns, all the following described lot or strip of land situate in Atlantic City," &c., "together with all the rights,

members, privileges and appurtenances to the same belonging, or in anywise appertaining, and all the estate of the said party of the first part of, in and to the same." Then follows the *habendum* clause in these words: "To have and to hold the same unto the said parties of the second part, their successors and assigns, for the purposes of the said railroad for and during the continuance of the said railroad, to their only use, benefit and behoof forever."

The theory of the trial judge, and the contention before us of counsel for the respondents, is that the effect of the *habendum* clause in the deed is to create a base or qualified fee, determinable by the abandonment by the grantee or its successors of the use for railroad purposes of the lands conveyed. This theory is rested largely upon the opinion delivered by this court in the case of *Pipe Line Co. v. D., L. & W. R. R. Co.,* 62 *N. J. L.* 254. The question there presented for determination was whether the Pipe Line Company had a legal right to enter upon lands conveyed by one Stewart to the Morris and Essex Railroad Company (the predecessor in title of the Delaware, Lackawanna and Western Railroad Company), and construct thereon a part of its pipe line system. The Stewart deed contained a covenant on the part of the grantee to construct and maintain a way under its tracks for the purpose of affording the grantor access from the portion of his farm which lay on one side thereof to the portion lying on the other side. The pipe line was laid under the surface of this way. In considering this question the court took occasion to discuss the effect of the *habendum* clause contained in the deed, which was "to have and to hold the said above described lands and premises, with the appurtenances, unto the Morris and Essex Railroad Company, and its successors and assigns forever, for all the purposes mentioned in its said act of incorporation and the supplements thereto passed and to be passed;" the purposes mentioned in the act of incorporation being the construction and operation of the company's railroad. It was declared by the court that the effect of the words "for

all the purposes," &c., contained in the *habendum* amounted
to a qualification of the fee that enured to the company by
the operative words of the grant, and that the estate acquired
by it was a qualified fee, or a fee-simple determinable. The
fact that the railroad company was using for railroad pur-
poses the land conveyed at the time of the entry by the pipe
line company was not disputed, and it was, therefore, held
by the court that such entry was in violation of the rights
of the railroad company as the owner of a qualified fee which
had not yet been determined.

It will be observed from the above recital that the char-
acter of the estate vested in the railroad company by the
Stewart deed was not directly involved in the solution of
the question determined; for the act of the pipe line com-
pany was clearly tortious whether the railroad company held
an estate in fee-simple absolute, or whether it held a qual-
ified or base fee which had not been determined. In calling
attention to the fact that the decision of the case did not
necessarily involve a determination of the effect to be given
to the *habendum* clause of the deed, we are not to be un-
derstood as expressing any doubt as to the correctness of the
construction put upon it. We observe, however, that there
is very respectable authority in other jurisdictions for the
view that a declaration in an *habendum* that the grant is for
a special purpose, without other words, does not operate to
debase a fee-simple absolute, created by the granting clause
of the deed, to a qualified or determinable fee, particularly
where the purpose declared is the only one for which the
grantee can lawfully hold real estate.

We consider, however, that the doctrine of the cited case
is not applicable to that which is now before us. If the
*habendum* clause, after providing that the grantee was to
have and hold the lands conveyed to it, its successors and
assigns, for the purposes of its railroad, had stopped there,
the pipe line case would be apposite. But this is not the
situation. The *habendum* further declares that the grantee
is to hold the lands conveyed "for and during the continu-

ance of the said railroad." Conceding the soundness of the principle that where the *habendum* clause declares the grantee shall hold the land granted for a specific purpose, and not more, his estate is determined when that purpose is abandoned, this doctrine can have no application where the *habendum* in a subsequent clause negatives the idea that the words constitute a limitation upon the duration of the estate, by expressly declaring that the fee of the grantee shall continue so long as certain conditions shall remain unchanged; or until a certain event shall have happened; or during a designated period which may be either definite or indefinite in extent.

The view of the trial court, and the argument of counsel for the respondent, practically nullify the force of the latter clause in the *habendum* before us, overlooking the rule of construction that every part of a written instrument must be given effect if possible. In our opinion the insertion of the words "for and during the continuance of the said railroad," in the *habendum,* renders the estate of the grantee determinable only if and when its railroad shall have ceased to exist.

It may be true, as is argued on behalf of the respondent, that the conveyance of these lands by the railroad company to third parties was a perpetual abandonment of their use for railroad purposes, and that such action was a violation of their contract as exhibited in the deed. We notice, however, that the first section of the charter of the Camden and Atlantic Railroad Company authorizes it to purchase, hold and *convey* lands necessary or expedient for the objects of its incorporation (*P. L.* 1852, *p.* 263) ; and it may well be that under proper circumstances a conveyance of land already acquired by it is an act done in the execution of the purposes for which the company was created. But it is not necessary, in the determination of the case before us, to take up the consideration of this matter. Conceding that the conveyances by the appellant company were in violation of its obligations under the deed, these breaches of its contract

did not operate to divest it of the estate which it held in the land, and cause them to revert to the grantor or its successor. The qualified fee vested in the railroad company still remains in it or its grantee; and, as is stated in the pipe line company case (*pp.* 268, 269), "so long as the qualified fee remains the grantor or his heirs have no right of entering upon the lands."

The conclusion we reach on the whole case is that a verdict should have been directed in favor of the appellants, instead of against them, and that the judgment under review must be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, TAYLOR, GARDNER, JJ. 12.