CITY OF LONG BRANCH, RESPONDENT, v. WILHELMINA TOOVEY, APPELLANT.

Argued October 25, 1927—Decided February 6, 1928.

For the appellant, *Quinn, Parsons & Doremus.*

For the respondent, *Charles F. Sexton.*

The opinion of the court was delivered by

MINTURN, J. The facts are substantially matters of record, and are, therefore, not in dispute. The heirs of Samuel Wardell, who, in his lifetime, was owner of a tract of land in the city of Long Branch, in which the *locus in quo* was situated, filed in the county clerk's office a map of the tract, on August 12th, 1919. The map indicated streets and lots thereon, and some of the lots were sold with reference to the map, which bore this inscription, "Map of building lots of homestead property of Samuel Wardell, deceased, at Long Branch, N. J. W. H. DeNyse, Surveyor, January 10th, 1903." Upon the map was shown, *inter alia,* Grand avenue, fifty feet in width, running to the river. On December 8th, 1902, Mary L. Cooper and husband, Clemence W. Weatherby and Samuel Weatherby, heirs of Samuel Wardell, conveyed to Wilhelmina Toovey, the defendant, by warranty deed that portion of Grand avenue delineated on the map lying between McClennan street and the river, which she thereafter enclosed and proceeded with her daughter to build upon. At this juncture the city instituted this action in ejectment to maintain the public right thereto, and the trial of the action resulted in the direction of a verdict for the city, from which judicial action this appeal was taken.

It is to be observed that the deed to the plaintiff was executed by the heirs of Samuel Wardell, and refers in its description to the *locus in quo,* with reference to the map. The main insistence of the defendant is that the filing of the map did not *ipso facto* result in an absolute dedication of the lands delineated thereon for public use until the city by some formal resolution of acceptance, or by unequivocal act of possession had manifested its intention to accept the public streets and highways thereon delineated. It was further insisted that the

present demand of the city is inconsistent with the acts of its officers in accepting taxes assessed upon the *locus in quo,* and the act of its engineer in giving lines to adjacent owners of property for the laying of curbs on an intersecting street, which acts are inconsistent with its present claim of ownership and possession under the dedication.

It was further contended that the *locus in quo* was allowed by the city to go into disuse, and to become overgrown with wild verdure, to such an extent as to indicate an abandonment of any public concession created by the dedication, which condition, it is argued, presented a factual question as to acceptance by the city, to be determined by a jury.

The legal solution of the question thus mooted is not *res nova* in this jurisdiction, since by repeated adjudications in this court and the Supreme Court the law has been established contrary to the contentions of the defendant.

The rule of law thus established may, therefore, be considered at this period of our legal history as academic, and an analytical review of the cases is therefore deemed unnecessary. It must suffice, however, to state that sixty years ago, in *Trustees of The M. E. Church* v. *Hoboken,* 33 *N. J. L.* 13, the Supreme Court, speaking by Mr. Justice Depue, declared the legal rule to be that "when the owner of lands procured them to be laid off in blocks, streets and squares, and has a map made on which are delineated such streets and squares, which he files among the public records of the county, and by reference to which he makes sales of lots, the streets and squares as laid down on said map become thereby dedicated to public use." That principle, subsequently affirmed by this court, has since its enunciation presented the unquestioned rule of law of the state. *Hoboken Land and Improvement Co.* v. *Hoboken,* 36 *N. J. L.* 540; *Hoboken* v. *Pennsylvania Railroad Co.,* 124 *U. S.* 656; *Price* v. *Plainfield,* 40 *N. J. L.* 608.

Neither can the right of the city, charged by law with the duty of protecting and representing, as an arm of the state, the public right in maintaining public streets and highways, be challenged as plaintiff, in view of the cases cited, and

those following and based upon it. *Hoboken Land and Improvement Co.* v. *Hoboken, supra.*

Nor can it be successfully contended that the duty of the city to avail itself of the public right thus conceded is to be determined only by formal resolution of its governing body, or by overt acts, indicating possession and ownership within a given time, in the absence of which the doctrine of laches and estoppel will supervene to eliminate the public right, since it is settled that once the legal status thus attaches and has become factually established, the dedication becomes irrevocable, unless the concession be expressly rejected by the lawfully constituted authorities, since *eo instanti* the streets become public property they constitute a portion of the state domain as the successor at common law of the king, who as trustee of the public was vested with all public concessions, and, hence, the protecting maxim of sovereignty, *Nullum tempus occurit regi,* became applicable to him and under our system of government to the state as his constitutional successor. 3 *Kents Com.* 366; *Kaskaskia* v. *Kaskaskia,* 249 *Ill.* 578; *Price* v. *Plainfield,* 40 *N. J. L.* 608.

The exercise of the public right of actual possession and dominion over such properties may therefore be suspended and lie dormant, until such time as in the judgment of the proper legal authority the public exigencies require their possession and use. *Price* v. *Plainfield,* 40 *N. J. L.* 614; *Mayor, &c., South Amboy* v. *Railroad Co.,* 66 *Id.* 623.

In the light of this status it is not conceivable upon any adequate legal conception of state territorial sovereignty, how, as contended, the unauthorized perfunctory or haphazard acts of administrative officials, occupied in an entirely different sphere of public duty, and in nowise charged by law with the responsibilities and conservation of the public domain, can be construed as a concession against the public interest, so as to result in an estoppel *in pais* to bar the efforts of the lawfully authorized body of the municipality entrusted with the maintenance of the public right. *Seabright* v. *Central Railroad Co.,* 73 *N. J. L.* 625, 631.

The application of these settled principles to the case· *sub judice* leads to the conclusion that the action of the learned

Circuit judge was legally correct, and that the judgment appealed from should be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 14.

*For reversal*—None.