MORRIS SCHOENBERG, PLAINTIFF, v. CECILIA T. O'CONNOR, DEFENDANT.

Decided September 21, 1935.

For the plaintiff, *Edward Schwartz.*

For the defendant, *Roberson & Roberson.*

ACKERSON, C. C. J. This matter is submitted to the court for decision without a jury upon an agreed state of facts. The action is brought to recover the sum of $1,000

deposit paid, and the sum of $100 search fees incurred by the plaintiff under a contract for the purchase of certain real estate from the defendant. The theory of the action is a recission of the contract upon the ground that the defendant's title is unmarketable because it is claimed that a strip of land eight feet in width extending along the southerly boundary of the premises in question has been dedicated to the public as a part of a public road in the process of widening and extending a previously existing private lane known as "Osborn Lane."

It appears from the stipulated facts, and abstracts of title made a part thereof, that the aforesaid Osborn Lane was originally created in the deed of conveyance from Henry Osborn and wife to Abraham Garrabrants, dated June 3d, 1847, and duly recorded on June 7th, 1847, whereby said Osborn conveyed a portion of his lands lying to the eastward of the road now known as Broadway in the city of Bayonne to the said Garrabrants. The only provision in the deed creating said "Osborn Lane" is as follows: "Excepting thereunto on the northerly side of the lot hereby conveyed a lane of twenty links wide for and as a right of way for the use of both parties herein mentioned." This same exception is contained in each of the deeds thereafter appearing in the chain of title except the last from Annie Kovacsy and husband to Harris Boorstein, the present owner, dated September 15th, 1919.

This lane as originally provided for and laid out did not in any way affect the premises here in question but adjoined the same on the south. The alleged dedicatory act by which it is claimed the strip eight feet wide along the southerly boundary of the premises in question is alleged to have been dedicated or offered to be dedicated as a part of a public road arises out of a written agreement entered into between Thomas McDonald, formerly the owner of the property, of which the lands in question are a part, and the aforesaid Henry Osborn. then the owner of adjoining premises to the east thereof.

The defendant contends that this agreement does not make the title unmarketable for four reasons.

In the first place, the defendant contends that the agreement between Osborn and McDonald was without consideration, lacked mutuality, and was, therefore, unenforceable and did not constitute a dedication of any part of McDonald's property as a public road. The only reason urged in support of this contention is, that while McDonald was in a position to dedicate to public uses all of the strip of land to be provided by him, as he still owned all of it in fee, nevertheless it is claimed that Osborn was not, because under his deed to Garrabrants in 1853, which was prior to his agreement with McDonald, he had created "Osborn Lane" as a private road "for the use of both parties" therein mentioned. It is insisted, therefore, that Garrabrants had an interest in that part of said original lane lying immediately in front of his premises and that this interest could not be affected by the later dedication of the widened and extended lane as a public road, except by his joining in the agreement. The defendant insists that the dedication of a road is tantamount to a conveyance to a municipality for the use of its inhabitants, and that Osborn having previously made conveyance to Garrabrants, was without authority to thereafter make conveyance to the municipality, and, the consideration for the agreement lacked mutuality and the consideration failed.

Whatever merit this contention may seem to have is entirely dissipated by the fact that Osborn did not convey all of his property to Garrabrants, but retained a large tract lying to the east thereof, as will appear from the stipulated facts and abstracts of title, and that the purpose of the agreement between Osborn & McDonald was not only to widen the existing road as originally laid out, but also to extend it much further to the eastward along the lines of property still owned by Osborn and McDonald as adjoining owners. In the agreement dedicating the road as thus widened and extended, care was taken to protect the parties against any restriction upon the public use thereof which might arise from the provision in the aforesaid deed from Osborn to Garrabrants, that the original lane as therein described was to be "for and as a right of way for the use of both parties" therein mentioned,

by providing in said agreement that "the road or lane from the Plank road to said Osborn's house, which is twelve feet wide is subject to the restriction contained in a deed given by the said Osborn to Abraham Garrabrants in the year Eighteen Hundred and Forty-seven." The certified copy of the deed from Osborn to Garrabrants discloses no other *"restriction"* upon the original road or lane than the restriction arising from the limited purpose of its creation, to wit, "as a right of way for the use of both parties" therein mentioned. It is apparent, therefore, that the aforesaid agreement between Osborn & McDonald for widening and extending "Osborn Lane" and its dedication to public use, contemplated and made provision for any rights which the said Garrabrants might be able to assert as against the public use of the lane in so far only as it affected that portion thereof lying immediately in front of and along the premises conveyed to him by virtue of his deed from Osborn. Clearly Osborn did not attempt to dedicate to the public any right which Garrabrants might have or restriction he might assert by virtue of his aforesaid deed, as the dedication of the road was made expressly subject to such possible restriction upon the public use thereof. It follows, therefore, that the defendant cannot prevail upon the first ground taken by him.

In the second place, the defendant urges that the agreement between McDonald and Osborn did not constitute a dedication, but merely an unconsummated agreement to dedicate. There can be no doubt that the agreement is crudely drawn but the test of a dedication or offer to dedicate, is to be found in the real intention of the donor. As was said in the case of *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken,* 36 *N. J. L.* 540 (at *p.* 547) :

"Dedication is distinguishable from a grant in that a special grantee need not be in existence to accept the gift, and contrary to the rules of the common law, an interest in lands may thereby be granted without the intervention of the ordinary common law assurances. The intent of the donor may be gathered from his actions and declarations resting only in parole. But when that intention is once ascer-

tained, the character and scope of the dedication are as unalterably fixed as if the gift had been consummated by a formal instrument of grant."

In the case of *Trustees of M. E. Church, Hoboken* v. *The Mayor, &c.,* 33 *N. J. L.* 13 (at *p.* 18), the court in speaking of a dedication said: "and in this respect it forms an exception to the general rules of transferring or granting an interest in lands, as it may be done without a deed, and without any person competent to accept the grant as grantee. The public is an ever-existing grantee, capable of taking a dedication for public uses."

While the intent of the parties in the case *sub judice* is to be gathered from the terms of a written instrument, nevertheless, having in mind the fundamental proposition that the dedication itself would not have to be consummated by a special written grant, it seems easy to gather the intention of the parties to the agreement in question to make a present dedication or offer of dedication for future acceptance by the public corporation from the provision found near the end of the agreement wherein it is stated that the road with its increased width and extension *"is given and granted* by the said Osborn and McDonald as a public road." (Italics mine.)

It is, of course, true as stated in the stipulated facts, that the municipality has never taken formal action to accept the dedication, and that the present defendant and her predecessors in title have always paid the taxes levied by the city of Bayonne on the lands and premises described in the contract of sale between the parties in this action, and that they have been in physical possession of the lands and premises for the full width as described in said contract since the erection of the building thereon which was apparently in 1886. It further appears that the building extends over on to the eight foot strip along the southerly boundary of the premises in question. These facts, however, would not destroy the right of the public authorities to formally take over "Osborn Lane" as widened and extended at any time in the future, if there was really an intent to dedicate the same to public uses. The right of the public to appropriate a dedicated street to the public use at any

future time when their wants or convenience may require it, attaches immediately on dedication. Lapse of time will not impair the public right. *South Amboy* v. *New York and Long Branch Railroad Co.,* 66 *N. J. L.* 623; 50 *Atl. Rep.* 368; *City of Long Branch* v. *Toovey,* 104 *N. J. L.* 335 (at *p. p.* 338); 140 *Atl. Rep.* 415; *Booraem* v. *North Hudson County Railway Co.,* 40 *N. J. Eq.* 557; 5 *Atl. Rep.* 106; *Dvorin* v. *City of Bayonne,* 111 *N. J. L.* 52; 161 *Atl. Rep.* 654.

Read as a whole in connection with the exhibits which have been offered in this case, there can be no doubt that Osborn and McDonald in their agreement of June 26th, 1854, intended that "Osborn Lane" as then existing as a private road should be widened and extended, not only for their mutual benefit as the former's land had been cut off from all public highways, but also for the use of the public at such time as the public authorities might see fit to accept the dedication and assume the responsibilities incident thereto.

It is next contended by the defendant that no dedication has been accepted by the city of Bayonne and, therefore, the same could not be considered effective.

The difficulty with this contention is that the defendant fails to distinguish between the effect of dedication upon the donor and upon the donee. As was said in the case of *Dvorin* v. *City of Bayonne, supra:*

"That recognition of a street description in the deed is as conclusive as if the street was dedicated by a map and although the municipality must accept it by formal adoption before it can be forced to repair the street dedicated, it is not essential to the consummation of the dedication so as to cut off the owner from the power of retraction or subject the dedicated lands to the public use, whenever, in the estimation of the municipal authorities, the wants or convenience of the public require it for that purpose."

See, also, *Hoboken Land and Improvement Co.* v. *Mayor of Hoboken, supra,* and *Long Branch* v. *Toovey, supra.*

If there was a valid dedication by Osborn and McDonald, they have put it beyond their power to retract the same, and

since the city might accept the dedication at any time in the future this fact would unquestionably make the title to the premises in question unmarketable.

In the fourth place, the defendant contends that the defendant and her predecessors in title have enjoyed undisturbed ownership, possession and control of the premises in question for a period in excess of thirty years and that any claim, therefore, which arose in favor of the city or members of the public prior to that time is barred and overcome by "An act for the limitation of suits respecting title to land." Rev. 1877, page 598 (3 *Comp. Stat., p.* 3172), as amended by *Pamph. L.* 1922, *ch.* 188, *p.* 315; 1 *Cum. Supp. Comp. Stat., p.* 1816, § 28.

In the case of *Dvorin* v. *City of Bayonne, supra,* Vice-Chancellor Fallon said:

"It is well established that no right can be obtained against the public in dedicated lands by adverse possession, * * *. Lapse of time, however long the public right in a street is suspended, though coupled with an user by the owner, which would otherwise be adverse will not make title by prescription against the public."

See, also, *Price* v. *Inhabitants of Plainfield,* 40 *N. J. L.* 608; *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken, supra; Dodge & Bliss Co.* v. *Mayor, &c., of Jersey City,* 105 *N. J. Eq.* 545 (at *p.* 554); 148 *Atl. Rep.* 783.

It is evident from what has been said that the defendant could not cut off the public right by adverse user either under the statute or at common law.

The contract of sale in the instant case specifically makes the "unmarketability of title" a test of plaintiff's right to rescind. Such a condition exists when for the vendee to accept the title proffered would lay him open to a fair probability of vexatious litigation with the possibility of serious loss. *Eisler* v. *Halperin,* 89 *N. J. L.* 278; 98 *Atl. Rep.* 245.

In the last cited case the court said:

"There may be some cases where equity would refuse relief to a vendor on account of doubtful features of title that

nevertheless would not support a rescission by vendee and a suit for recovery back of purchase-money paid; but if there be a substantial defect, the vendee may rescind and recover back his payments and interest if the title is not passed * * *. From all which considerations it should sufficiently appear that for the Eislers to accept the title proffered would lay them open to a fair probability of vexatious litigation with the possibility of serious loss. A title in that condition is plainly unmarketable and substantially defective and a purchaser is justified in refusing to accept it."

Tested by the foregoing rule, there can be no doubt that the title in question is unmarketable and the plaintiff entitled to rescind the contract of sale. Indeed the defendant herself reveals in her brief and by a copy of an opinion of the Court of Chancery in another case between the defendant and another party, that there has already been litigation respecting the dedication here involved, which litigation was not conclusive of the questions here presented.

I, therefore, find in favor of the plaintiff and against the defendant for the sum of $1,100 with interest thereon from September 2d, 1930, amounting to $330, making a total of $1,430.