FRANK LA SALLE, PLAINTIFF-RESPONDENT, v. INES F. LA POINTE, DEFENDANT-APPELLANT.

Argued January 25, 1954—Decided February 15, 1954.

*Mr. John J. Rafferty* argued the cause for the appellant (*Messrs. Rafferty & Blacher,* attorneys).

*Mr. Saul Neivert* argued the cause for the respondent.

The opinion of the court was delivered by

BURLING, J.   This is a civil action relating generally to the rights of the parties with respect to an alleged breach of a contract for the sale of real estate.   Frank La Salle, the plaintiff, instituted the suit in the Middlesex County District Court against Ines F. La Pointe, the defendant, who filed a counterclaim.   From an adverse judgment the plaintiff appealed to the Superior Court, Appellate Division. There was a reversal and the defendant petitioned for certification, which we allowed.   13 *N. J.* 391 (1953).

The contract entered into bound the defendant as the vendor to "* * * well and sufficiently convey to the said purchaser (the plaintiff herein), his heirs and assigns, by Deed of Warranty free from all encumbrances * * *" certain described land, on a specified date.

The contract also included the following provisions:

"The seller represents and warrants that the refrigerator delicatessen case, all counter and shelves in the store, 1 cash register, 1 glass show case, 1 meat slicer, 1 coffee grinder, 1 counter scale, 1 wooden partition, the gas range in the apartment, and such screens and screen doors as are now in the premises are owned by the seller and are included in this sale as part of the purchase price hereinabove mentioned.

The risk of loss by fire or otherwise shall be on the seller until the closing of title.

This Contract is entered into upon the knowledge of the parties as to the value of the land and whatever buildings are upon the same, and not on any representations made as to character or quality."

The day for closing title had been set at November 30, 1951. On November 26, 1951 the plaintiff ordered a survey, which was completed November 29, 1951. The survey disclosed that the building, in particular the easterly brick wall support thereof, supposedly on the land which was the subject of the agreement of sale overlapped on the adjoining land, an encroachment on the adjoining premises of 0.36 of a foot (approximately 4.32 inches). On discovery of this plaintiff immediately elected to rescind the contract and notified defendant thereof. (Adequacy of the mechanics of the rescission is not questioned by the parties to this appeal.)

On January 21, 1952 the defendant advised the plaintiff that she had acquired a six-inch strip of land to remove the above mentioned encroachment and was willing to include that strip in a conveyance to the plaintiff.

On August 18, 1952 the plaintiff instituted this action to recover from the defendant his deposit money, costs of survey and costs of examination of title, all of which totalled $235. The defendant counterclaimed, alleging that the plaintiff had breached the contract, and claiming damages therefor in the amount of $1,000. The trial court entered judgment in

favor of the defendant on both the complaint and the counter-claim. The Appellate Division reversed, ordering judgment in favor of the plaintiff in the amount of $235.

The sole question involved on this appeal is whether, in the absence of a specific provision contained in the agreement of sale, the vendee prior to closing of title thereunder may rescind a contract for sale of land for the reason that the building purportedly on the land to be conveyed extends beyond the lot line and onto an adjoining property.

There are two premises advanced upon which the judgment of the Superior Court, Appellate Division, is sought to be sustained in relation to the question involved. The first is that the encroachment of the buildings over the adjoining property constitutes a defect rendering unmarketable the title to the lands intended to be conveyed; and the second is that such an encroachment is within the express covenant of the contract relating to freedom from encumbrances. We find that in this case both theories are tenable.

■ No specific covenant exists in the agreement of sale subjected to this action with respect to marketability of title. However "in every contract for the sale of lands, an agreement is implied to make good title, barring an expression *contra.*" *Casriel v. King,* 2 *N. J.* 45, 49 (1949); *Meyer v. Madreperla,* 68 *N. J. L.* 258, 266 (*E. & A.* 1902). This philosophy has been expressed as follows:

"It has been uniformly held in this state that a court will never compel a purchaser to take a title unless it be one which puts the purchaser in all reasonable security that no flaw or doubt will come up to disturb its marketable title. * * *"

*Breitman v. Jaehnal,* 99 *N. J. Eq.* 243, 248 (*Ch.* 1926) affirmed for the reasons stated in the opinion filed in the former Court of Chancery by Vice-Chancellor Berry, 100 *N. J. Eq.* 559 (*E. & A.* 1927).

■ "In the absence of any contrary provision in the contract, it is incumbent upon the vendor to give the purchaser a good or marketable title * * *."

III *American Law of Property* (1952), *sec.* 11.47, *pp.* 123-124; 8 *Thompson on Real Property* (*perm. ed.* 1940), *sec.*

4585, *p.* 537; *Patton on Titles* (1938), *sec.* 30, *p.* 145; 55 *Am. Jur., Vendor and Purchaser, sec.* 149, *pp.* 619-620; 66 *C. J., Vendor and Purchaser, sec.* 516, *pp.* 845-846.

■ It appears that there is no difference in legal connotation between the word "good" and the word "marketable" as pertinent to the implied covenant to convey good title. Nor does there appear to be a significant difference between the principles applied in law and in equity in this respect, *Meyer v. Madreperla, supra* (68 *N. J. L.,* at *p.* 268).

■ The "encroachment" in the present matter consists of the overlapping of the building, purportedly on the land described in the agreement of sale, over adjoining premises. It has been said that an encroachment of this type "makes the title of the purchaser unmarketable, since the adjoining owner may compel the removal of the encroachment or sue for the damages caused by it." *Lieberman, New Jersey Abstracts and Titles* (1931, with 1940 *supplement*), *sec.* 667, *p.* 492. This statement compares favorably with the general rule laid down by the former Court of Errors and Appeals in *Tillotson v. Gesner,* 33 *N. J. Eq.* 313, 326-327 (*E. & A.* 1880), namely

"* * * The true rule is stated in 3 *Pars. on Con.* (*6th ed.*) *380, that if the character of the title be doubtful, although the court were able to come to the conclusion that, on the whole, *a title could be made* that would not probably be overthrown, *this would not be good title enough;* for the court have no right to say that their conclusion, or their opinion, would bind the whole world, and prevent an assault on the title. The purchaser should have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value." (Emphasis supplied.)

The definition laid down in the *Tillotson* case, *supra,* was applied in *Bier v. Walbaum,* 102 *N. J. L.* 368, 370 (*E. & A.* 1926), to an action at law by a vendee for recovery of deposit money and survey expenses from a vendor. In the *Bier* case, *supra,* a jury verdict for the plaintiff was affirmed. The only evidence related to encroachments of the type involved in the present case, and the trial judge had charged the jury that if there were "incumbrances that make this title un-

marketable, then the plaintiffs are entitled to a verdict." The former Court of Errors and Appeals found "no error in the record," although stating that there is a distinction between the strict dictionary definitions of "encumbrance" and "encroachment," and held that a marketable title "must be such as to make it reasonably certain, that it will not be called into question in the future, so as to subject the purchaser to the hazard of litigation with reference thereto. \* \* \*"

In *Vassar Holding Co. v. Wuensch,* 100 *N. J. Eq.* 147 (*Ch.* 1926), an agreement for the sale of real estate called "only for a warranty deed free from all incumbrances" and contained "no specific statement that the buildings are entirely on the land." (*p.* 148). The buildings encroached on adjoining property to a depth of 1 to 1½ inches (*p.* 148). Vice-Chancellor Church held that this encroachment was not trivial and constituted an encumbrance that rendered the title unmarketable, relying on *Doutney v. Lambie,* 78 *N. J. Eq.* 277, 279 (*E. & A.* 1911), wherein it was held that an encroachment of this character was "sufficient to render the title unmarketable" under the principles expressed in *Tillotson v. Gesner, supra. Cf. Simpson v. Klipstein,* 89 *N. J. Eq.* 543, 545 (*E. & A.* 1918).

These principles require the conclusion that the title offered by the defendant was not a good title within the implied agreement of the contract.

It appears to be the law, under *Bier v. Walbaum, supra,* that at law a material encroachment constitutes an encumbrance warranting the rejection of title. Encroachments of the category under consideration here have been classified as encumbrances. III *American Law of Property,* (1952), *sec.* 11.49, *pp* 133, 140; 8 *Thompson on Real Property* (*perm. ed.* 1940), *sec.* 4586, *pp.* 545–546; *Patton on Titles* (1938) *sec.* 368, *pp.* 1078-1079; 4 *Tiffany Real Property* (*3rd ed.* 1939), *sec.* 1007, *p.* 142; 66 *C. J., Vendor and Purchaser, sec.* 612, *pp.* 924-925.

An encumbrance is any right or interest in an estate that impairs the use or transfer of property, constitutes a

burden on the property or depreciates its value, although not inconsistent with the passing of the fee by deed. *Bier v. Walbaum, supra*, 102 *N. J. L.*, at *p.* 370; *Demars v. Koehler*, 62 *N. J. L.* 203, 204 (*E. & A.* 1898). *Cf.* 4 *Tiffany Real Property* (3rd ed. 1939), sec. 1002, *p.* 133. Compare *Emery v. Hansen*, 107 *N. J. Eq.* 117, 119 *et seq.* (*E. & A.* 1930). This supports the conclusion here, as in the *Bier* case, *supra*, that the encroachment under consideration was substantial and constituted an encumbrance within the intendment of the term used in the agreement of sale. Such a conclusion is entirely in accord with the views expressed by the former Supreme Court and expressly adopted by the former Court of Errors and Appeals in *Scheinman v. Bloch*, 97 *N. J. L.* 404 (*Sup. Ct.* 1922), affirmed 98 *N. J. L.* 571 (*E. & A.* 1923). The *Scheinman* case, *supra*, treated solely with the facts but clearly approved in principle the law that an encroachment constitutes a defect in title. The decision was rested on factual grounds, namely that where the encroachment is merely nominal and not substantial the vendee may not refuse the title.

The defendant argues that *Murphy v. Skelly*, 101 *N. J. Eq.* 793, 795 (*E. & A.* 1927) and *Dorfman v. Lieb*, 102 *N. J. Eq.* 492, 494 (*Ch.* 1928) affirmed 104 *N. J. Eq.* 497 (*E. & A.* 1929) hold to the contrary. Neither may be so considered. In each of these two cases the same principles hereinabove adverted to were applied, the resultant determination being that the encroachment involved was too insignificant under the circumstances to constitute an encumbrance in the particular case. Further, in both cases there were additional factors not applicable in the matter *sub judice.*

For the reasons expressed in this opinion the judgment of the Superior Court, Appellate Division, is affirmed.

HEHER, J., concurring in result.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—None.