**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2810-18T3

JENNIFER THOMPSON
and JOHN THOMPSON,

     Plaintiffs-Appellants,

v.

LIBERTY MUTUAL
INSURANCE COMPANY,

     Defendant,

and

ALLSTATE INSURANCE
COMPANY,

     Defendant-Respondent.

_____

Submitted March 31, 2020 – Decided July 1, 2020

Before Judges Hoffman and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-1727-16.

Maggs, McDermott & Dicicco, LLC, attorneys for appellant (James A. Maggs, of counsel; Victoria J. Adornetto, on the briefs).

Hoagland Longo Moran Dunst & Doukas, attorneys for respondent (Richard J. Mirra, on the brief).

PER CURIAM

On December 14, 2012, an Acura MDX driven by Jonathan Judson collided with a Mercury Grand Marquis driven by plaintiffs' daughter. As a result of the collision, plaintiff[1] – a belted front-seat passenger in her daughter's vehicle – sustained injury. After settling with Judson for the policy limits of the insurance covering the MDX, plaintiffs presented a claim for underinsured motorist (UIM) compensation to their auto insurance carrier, Allstate Insurance Company (Allstate). Pursuant to the Automobile Insurance Cost Reduction Act,[2] Allstate's policy contained a provision requiring plaintiff to show she suffered a permanent[3] injury in order to recover noneconomic damages.

---

[1] In this opinion, we refer to Jennifer Thompson individually as plaintiff, and Jennifer and John Thompson collectively as plaintiffs. Plaintiff's husband sues per quod.

[2] N.J.S.A. 39:6A-1.1 to -35.

[3] As defined in N.J.S.A. 39:6A-8(a), "An injury shall be considered permanent when the body part or organ, or both, has not healed to function normally and will not heal to function normally with further medical treatment."

A-2810-18T3

Unable to resolve their UIM claim, plaintiffs filed suit against Allstate.[4] After Allstate stipulated liability, the matter proceeded to trial before a jury on the issues of proximate cause and damages. On January 17, 2019, at the conclusion of a three-day trial, the jury returned a unanimous verdict, finding plaintiffs did not prove that plaintiff sustained a permanent injury that was proximately caused by the December 14, 2012 accident. Based on the jury's verdict, the trial judge entered a "no cause" order of dismissal. This appeal followed, with plaintiffs contending that erroneous evidentiary rulings resulted in harmful error. We agree, and therefore reverse the dismissal order, reinstate plaintiffs' complaint, and remand for a new trial.

I.

We derive the following facts from the trial record. We first address the happening of the accident and then plaintiff's injuries.

A. The Accident.

The accident occurred when the Grand Marquis driven by plaintiffs' daughter stopped for a red light in the westbound lane of Route 70, at its

---

[4] Plaintiffs also asserted a UIM claim against Liberty Mutual Insurance Company, the insurer of the Grand Marquis. The trial court granted Liberty Mutual's motion to dismiss in lieu of a responsive pleading.

intersection with Lake Ridge Boulevard, in Toms River. According to plaintiff, after her daughter brought the vehicle to a complete stop for the red light, the MDX struck them from behind; as a result of the impact, the Grand Marquis "jolted forward."

Plaintiff recounted that after Judson "exchanged words" with her daughter, he "[got] in his car, [went] around us[,] and [left] the scene." Plaintiff and her daughter then pulled off into a nearby parking lot and called the police.

According to Judson, the Grand Marquis "made a complete stop at a yellow light and [he] didn't have time to react." He tried to swerve around it, but "end[ed] up clipping her bumper just enough where it tapped her car . . . ." Judson estimated his speed at the point of impact at "[n]o more than ten miles an hour, no more than ten."[5] Judson testified that, after the collision, he and plaintiff's daughter got out of their vehicles and exchanged words. He claimed he provided his name to plaintiff's daughter but lost sight of her car after it pulled away. Instead of searching for her car, Judson continued to his destination.

Patrolman Sean Smith of the Toms River Police Department responded to the scene, where he spoke with plaintiff and her daughter. He recorded his

---

[5] At his deposition, Judson estimated his speed at the time of impact "[p]robably like [fifteen] to [twenty] miles an hour if that."

observations in a written police report, noting, "Rear end damage was observed to [the Grand Marquis]. No injuries were reported by the driver or passenger . . . ." Patrolman Smith offered to call an ambulance for plaintiff, but she declined.

Provided with the license plate number of the MDX, the next day Patrolman Smith proceeded to an address in Lakewood, where he found the Acura involved in the accident. He observed "[m]inor damage . . . to the front of the vehicle." He testified that "minor damage" usually indicates "cosmetic damage" or "non-disabling" damage.

Patrolman Smith spoke to the owner of the MDX, who told him that Judson drove the Acura the day before. After phoning Judson and hearing his version of events, Patrolman Smith issued traffic citations charging him with leaving the scene of an accident, N.J.S.A. 39:4-129(b), and careless driving, N.J.S.A. 39:4-97.

Plaintiff's husband testified that his daughter called him and informed him of the accident. He came to the scene and drove plaintiff home, with their daughter following in her car. Shortly after arriving home, plaintiff's husband drove her to the Ocean Medical Center emergency room.

5

After answering questions about his wife's injuries, plaintiff's husband testified that he took the Grand Marquis to a body shop and personally monitored the repairs. At that point, Allstate's attorney asked to be heard at sidebar, where the following exchange occurred:

> [ALLSTATE'S ATTORNEY]: I'm not quite sure where this is going. The vehicle was repaired by . . . Atlantic Auto Body. There is no witness named from Atlantic Auto Body that's coming here. I don't know if [plaintiff's attorney] intends to get into with this witness what repairs were done but there needs to be some type of expert to say, here is what repairs were done related to any damage cause by this accident. This witness can testify what his observations are, but he's not an expert witness.
>
> [PLAINTIFFS' ATTORNEY]: He can talk about his observations of the car and the damage he observed while at the body shop.
>
> [ALLSTATE'S ATTORNEY]: No he can't.
>
>     . . . .
>
> [PLAINTIFFS' ATTORNEY]: I don't have to call [an] expert. [Plaintiff's husband] went to the site, he saw the bumper removed, he saw the undercarriage damage, he saw the damage to the frame . . . . They were repairing the frame, they repaired the trunk. If [Allstate is] going to put in pictures of just the bumper, then it's highly prejudicial to leave out the fact that there is damage completely behind [the bumper] –
>
> [THE COURT]: But you need an expert.

A-2810-18T3

. . . .

[PLAINTIFFS' ATTORNEY]: He can discuss his personal observations.

[THE COURT]: But it's too speculative as to what caused it. He's saying, they opened up the bumper and I saw this. How does he know what caused it?

. . . .

[PLAINTIFFS' ATTORNEY]: . . . . [Allstate] wants to put in pictures of the bumper and say it was a tap and minimal damage. It's highly prejudicial if you [keep] out the rest of the – the remainder of the pictures that show that that was not the extent [of the damage].

. . . .

[THE COURT]: . . . . No. [He] can't testify. He's not an expert to testify to that and you had ample opportunity . . . to get an expert for that. It would have been so easy for you to get an expert for that. I'm not going to do this, no way. In the 12th hour [you] put him on to say they took off the bumper and I saw this cracked. It's too speculative. Sorry.

After the sidebar ended, the judge then announced, "I'm sustaining the objection." He did not provide the jury with any explanation or instruction regarding his ruling.

Based upon the court's ruling, plaintiffs' attorney did not question plaintiff's husband any further about the observations he made when the bumper was removed from the Grand Marquis, nor did she attempt to have him identify

7

photos he took during the process. Consequently, the jury did not hear the observations made by plaintiff's husband[6] at the body shop nor did they get to view photographs of the damage behind the rear bumper.

After plaintiffs rested, Allstate called Judson as a witness and he provided the previously described testimony that he "tapped" plaintiffs' car and that the impact and damage were minor. Over objection,[7] the trial judge allowed Judson

---

[6] After convincing the judge to preclude testimony regarding the monitored repairs of the Grand Marquis, Allstate's attorney then brought out, on cross-examination, that plaintiff's husband had been employed by Plymouth Rock Insurance Company for the previous fourteen years. He described his position as an administrator for the company's Direct Repair Program, meaning "I'm responsible for our repair facilities."

[7] In her objection, plaintiffs' attorney argued it would be "highly prejudicial" for the court to allow Allstate to allow Judson to identify and discuss photographs relating to the post-accident damage to the Grand Marquis, after precluding plaintiff's husband from testifying regarding the observations he made at the body shop; in addition, she cited the absence of any photographs depicting the damage to the Acura. The judge overruled the objection without explanation. He then asked plaintiff's attorney if she wanted him to charge the jury, at that point, in accordance with Model Civil Jury Charge 5.34 (Property Damage In Motor Vehicle Accidents). She responded yes and the judge advised the jury:

> In some accidents resulting in extensive vehicle damage[,] the occupants may suffer minor injuries or no injuries at all. In other accidents where there is no or little apparent vehicle damage[,] the occupants may suffer serious injuries.

to authenticate multiple photographs of the Grand Marquis with the rear bumper still intact and testify that he only caused a "scratch" to the right side of the vehicle's bumper. While the photographs apparently also showed damage to the left rear brake light and misalignment of the trunk, Judson testified that this other damage "had to [have] been [pre-existing], unless I hit the car at [forty] miles an hour."

B. <u>Plaintiff's Injuries.</u>

At the emergency room, plaintiff presented with complaints involving her neck, back and right wrist. According to plaintiff, "They took x-rays of my right wrist. . . . They gave me a brace and a sling. They also took x-rays of my neck, as I told them I was in a prior accident and had hardware. They wanted to make sure the hardware was not affected . . . ." Plaintiff was released with a recommendation for follow-up care.

---

> In reaching your decision in this matter[,] you are to give the photographs whatever weight you deem to be appropriate. [They are] but one fact to be considered, along with all other evidence[,] in determining whether the plaintiff sustained injuries as a result of the accident.

A-2810-18T3

Six days later, plaintiff went for follow-up care with Dr. Hoan-Vu Nguyen, M.D.,[8] a board certified orthopedic surgeon with a sub-specialty in spinal surgery. According to Dr. Nguyen, plaintiff reported complaints relating to her "neck, her right wrist, her upper back and her lower back." Initially, he prescribed conservative treatment in the form of physical therapy and a wrist splint. When plaintiff's symptoms persisted, Dr. Nguyen sent her for an MRI of her lumbar spine in April 2013, approximately four months after the accident. He read the MRI as showing "a [disc] herniation at L5-S1 . . . a central herniation with associated annular tear." Dr. Nguyen also sent plaintiff to another physician in his practice, Dr. Meyers, who performed epidural injections, facet injections, and radiofrequency ablation at L4-L5 and L5-S1.

Dr. Nguyen sent plaintiff for a second MRI of her lumbar spine in September 2014. He interpreted the MRI as showing "more compression on the nerve root . . . at L4-L5." He stated that plaintiff continued to receive pain management treatment from Dr. Meyers, at that time.

---

[8] Dr. Nguyen previously treated plaintiff for injuries she sustained in an April 25, 2008 motor vehicle accident. Dr. Nguyen performed cervical fusion surgeries on plaintiff in December 2009 and June 2011. Plaintiffs settled their case arising out of the 2008 accident five days before the accident under review.

Dr. Nguyen testified that plaintiff was hospitalized in May 2015, after she "developed severe worsening of her pain . . . and weakness in her right leg." He said the weakness proceeded to the point that plaintiff experienced "foot drop." Another MRI was completed at the hospital. Dr. Nguyen interpreted the MRI as showing that the herniation "has gotten even bigger and there's almost no room for this nerve root." He explained that plaintiff required surgery to remove "the compression on the nerve," and allow it to heal; otherwise, without surgery her "foot drop would be permanent."

On July 2, 2016, after plaintiff's symptoms failed to improve, Dr. Nguyen performed an L4-L5 decompression, laminectomy, and fusion with instrumentation. He explained the surgery involved removal of the disc and then the insertion of rods and screws, "or else [her] back would fall apart." While the surgery did not resolve all of plaintiff's lumbar problems, Dr. Nguyen said it did improve her foot drop condition.

Plaintiff testified she spent four to five days in the hospital for the surgery. She described the first day after her surgery as "terrible," recalling "[t]he pain . . . once everything [wore] off . . . ." She needed to use a walker for several months after the surgery, and then a cane for several months after that. She also received physical therapy for six months after her surgery. That therapy brought

11

stability to her legs, eventually permitting her to walk again without a walker or cane; however, at the time of trial, she still had "pain that goes down [her] leg." As a result, she continued to receive active pain management treatment.

Dr. Nguyen opined that plaintiff's lower back will never return to its pre-accident state. He further stated that the accident caused plaintiff to sustain trauma to her cervical spine, resulting in a contusion of the spinal cord, as confirmed by an MRI. He also described this as a permanent injury.

On the last day of trial, Allstate presented the testimony of its defense medical expert, Lance Markbreiter, M.D., a board-certified orthopedic surgeon. Dr. Markbreiter testified, "I don't do major spine surgery. I don't do fusions such as [plaintiff] had . . . . By 1998, I stopped doing major spinal surgery." He explained that he now performs mostly outpatient surgeries, "a lot of knees, a lot of shoulders."

After examining plaintiff and reviewing her medical records – including multiple MRIs – Dr. Markbreiter issued a written report on May 29, 2017. He opined that plaintiff's lumbar spine condition was degenerative, and that none of the MRIs showed any disc herniations. While he acknowledged that plaintiff's MRIs showed "progressive pathology at the L4-L5 level," he testified that the 2012 accident caused plaintiff to sustain only "a minor sprain to her

12

back." He explained that the initial conservative treatment plaintiff received and the results of her MRIs both supported his opinion that plaintiff did not sustain any permanent injuries as a result of the 2012 accident.

Dr. Markbreiter further testified that based upon the police report, the accident impact "was very minor." Notwithstanding the fact that Dr. Markbreiter was recognized as an expert witness in the field of orthopedic surgery, and not as an expert in accident reconstruction or biomechanical engineering, defense counsel next elicited testimony that the severity of the impact is "very important. The mechanism of injury, a small tap, it's almost unheard of that one will cause a disc herniation." Apparently emboldened by the absence of an objection to this testimony, and notwithstanding the fact that Dr. Markbreiter did not view any accident photographs prior to issuing his report, counsel elicited the following testimony:

> Q: Dr. Markbreiter the jury is going to have photographs which they're going to be able to take into the jury room. I'm going to represent to you that these have been identified showing the rear of the Thompson vehicle. You just gave an opinion that you had based upon the collision report and the history that you had in terms of the minor nature of the impact. Do those photographs corroborate that opinion?
>
> A: Yes.

At this point, plaintiffs' attorney finally objected.  The trial judge sustained the

objection, after noting there was not

> enough of a basis for [Dr. Markbreiter] to give an
> opinion based upon the pictures he's seeing now for the
> first time, especially with the limited amount of
> information he sees.  For example, was it to the right
> side, to the left side, or to the middle, or where was
> [plaintiff] seated in the car?  All of these things are a
> factor in what we call impact.  I don't think he knows
> [anything] about the impact . . . just from looking at
> these pictures, are they consistent with a minor
> [impact]?  Well, the jury can make that decision.
>
> . . . .
>
> That's a factual question that the jury can say, but it's
> not one that he can really testify to.
> . . . .
>
> I'm going to . . . sustain the objection.

At this point, the trial transcript indicates "sidebar ends."  Inexplicably,

the judge did not inform the jury he had sustained plaintiff's objection nor did

he instruct the jury to disregard the last question and answer.  Instead, Allstate's

attorney continued with his direct examination of Dr. Markbreiter.

## II.

We review a trial court's decisions to admit or exclude evidence under an

abuse of discretion standard.  Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.,

202 N.J. 369, 383-84 (2010) (citing Green v. New Jersey Mfrs. Ins. Co., 160

A-2810-18T3

N.J. 480, 492 (1999)). In doing so, we grant "substantial deference to the evidentiary rulings of a trial judge." Fitzgerald v. Stanley Roberts, Inc., 186 N.J. 286, 319 (2006) (citing DeVito v. Sheeran, 165 N.J. 167, 198 (2000)). Accordingly, absent a showing the trial court abused its discretion, we will not reverse a decision concerning the admission or exclusion of evidence unless we conclude it was so wide of the mark as to bring about a manifest injustice. E & H Steel Corp. v. PSEG Fossil, LLC, 455 N.J. Super. 12, 24-25 (App. Div. 2018) (citing Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)).

Under New Jersey's Rules of Evidence, all relevant evidence is presumptively admissible. N.J.R.E. 402. Evidence is relevant if it has "a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. To determine whether evidence is relevant, courts look at "the logical connection between the proffered evidence and a fact in issue." Verdicchio v. Ricca, 179 N.J. 1, 33 (2004) (quoting State v. Hutchins, 241 N.J. Super. 353, 358 (App. Div. 1990)). Courts determine "whether the evidence proffered 'renders the desired inference more probable than it would be without the evidence.'" Ibid. (quoting State v. Davis, 96 N.J. 611, 619 (1984)).

N.J.R.E. 901 states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims." As pointed out by the court in Kalola v. Eisenberg,

> [N.J.R.E.] 901 does not erect a particularly high hurdle. The proponent of the evidence is not required to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.
>
> . . . .
>
> The requirement under [N.J.R.E.] 901 is satisfied if sufficient proof has been introduced so that a reasonable juror could find that the matter in question is what its proponent claims.
>
> [344 N.J. Super. 198, 205-06 (Law Div. 2001) (internal citations and quotations omitted).]

Accordingly, all that is needed to admit photographs is witness testimony that the photograph is a fair and accurate depiction of what the exhibit purports to show. See Brenman v. Demello, 191 N.J. 18, 21 (2007) ("The admissibility of any relevant photograph rests on whether the photograph fairly and accurately depicts what it purports to represent . . . ."); State v. Joseph, 426 N.J. Super. 204, 220 (App. Div. 2012) ("The authentication of photographic evidence requires a witness to verify that it accurately reflects its subject, and to identify or state

16

what the photograph shows.") (citing State v. Wilson, 135 N.J. 4, 14 (1994)). However, a court may exclude otherwise admissible evidence "if its probative value is substantially outweighed by the risk of [] undue prejudice, confusion of issues, or misleading the jury . . . ." N.J.R.E. 403.

III.

On appeal, plaintiffs contend the trial judge erred in making his evidentiary rulings concerning the photographs of the Grand Marquis. Plaintiffs assert the trial judge should have allowed plaintiff's husband to testify and introduce photographs of further damage which he observed to the car at the repair shop. They contend this error was magnified when the judge permitted Allstate to introduce photographs of the car following the accident, and failed to properly instruct the jury after sustaining plaintiff's objection to Dr. Markbreiter's improper testimony commenting on the rear bumper photograph.

A. Evidence of Additional Damage to the Grand Marquis.

Our review is somewhat hindered by the fact that the proposed testimony of plaintiff's husband and any relevant photographs were not preserved, pursuant to Rule 1:7-3. Nevertheless, it appears clear from the record what counsel sought to elicit from plaintiff's husband. See N.J. Sports & Exposition Auth. v. Koziol, 172 N.J. Super. 219, 221 (App. Div. 1980).

17

Although the parties did not request a Rule 104 hearing, we hold that it was plain error for the trial court not to conduct an evidentiary hearing in order to determine the admissibility of the testimony and photographs of the additional damage that was revealed upon removal of the damaged rear bumper. See Kemp v. State, 174 N.J. 412, 432-33 (2002). Our adversarial process assumes the court will give the parties an adequate opportunity to be heard; if it does not, it cannot find facts reliably. Ibid. "[T]he detailed factual record requirement, firmly entrenched in our jurisprudence, requires adequate process at the evidentiary stage . . . ." Ibid. In a case where causation was the central issue, evidence of the severity of the impact to the Grand Marquis clearly had the capacity to determine the outcome of the case.

The record does not indicate the trial judge reviewed the deposition testimony of plaintiff's husband or any photographs taken at the body shop. Without reviewing this critical evidence, we are convinced the judge erred by telling plaintiff she needed an expert and the challenged evidence was "too speculative." While it remains possible that the outcome of a Rule 104 hearing may produce valid reasons for excluding the challenged evidence, such an outcome is far from certain. We note that an expert would not be required if a jury, based on its common knowledge and experience, could determine whether

18

there was any damage to the frame and, if so, whether it was causally related to the accident.

Expert testimony is not required when the subject can be readily understood by jurors utilizing their common knowledge and experience, provided it is not beyond the "ken of the average juror." State v. Harvey, 121 N.J. 407, 426-27 (1990). A topic is beyond the ken of the jury and requires expert testimony to support the claim only "when the subject matter to be dealt with 'is so esoteric that jurors of common judgment and experience cannot form a valid judgment as to whether the conduct of the party was reasonable.'" Rocco v. N.J. Transit Rail Operations, Inc., 330 N.J. Super. 320, 34 (App. Div. 2000) (quoting Butler v. Acme Mkts., Inc., 89 N.J. 270, 283 (1982)). Several cases provide examples of when expert testimony is not needed. See State v. Harvey, 121 N.J. 407, 427 (1990) (finding that neither comparison between shoe print and proffered shoe, nor proposition that "shorter people tend to have smaller feet" required expert testimony); Boland v. Dolan, 140 N.J. 174, 189 (1995) ("an instrument of 'common knowledge' like an ordinary magnifying glass, generally requires no expert testimony").

B.  Dr. Markbreiter's Improper Testimony.

We next address plaintiffs' argument that the trial judge erred in not providing a curative instruction after sustaining plaintiff's objection.  Since plaintiffs failed to request a curative instruction at trial, plaintiffs would normally face the burden of showing "that the failure to give such an instruction sua sponte constitutes an error 'clearly capable of producing an unjust result.'" State v. Mays, 321 N.J. Super. 619, 633 (App. Div. 1999) (quoting State v. Loftin, 287 N.J. Super. 76, 97 (App. Div. 1996)).  Regardless of the judge's failure to provide a curative instruction or plaintiffs' error in not requesting one, the plain error here was the judge's failure to announce his ruling and inform the jury that he had sustained plaintiff's objection.  As a result, the jury was allowed to consider Dr. Markbreiter's improper testimony commenting on the rear bumper photograph to support his opinions on causation.

Dr. Markbreiter is not a biomechanical expert qualified to comment on physical forces.  The record contains no evidence that Dr. Markbreiter has any background, training, or experience in biomechanics or accident reconstruction, nor did defendant offer him as expert in these fields.  Moreover, as the judge noted in sustaining plaintiffs' objection concerning the photograph of the rear bumper, the record lacks relevant details of the accident, including exact

information regarding the damage to each vehicle, the size of each vehicle, the speed of each vehicle, as well as information regarding the interior of plaintiff's vehicle.

The judge properly sustained plaintiffs' objection to Dr. Markbreiter's testimony commenting on the extent of damage depicted in the photo of the rear bumper of the Grand Marquis. Dr. Markbreiter did not rely upon the photo when he prepared his report setting forth his opinions in this case, nor does the record reflect that he possesses any expertise in biomechanics or accident reconstruction.

The heart of the dispute in this case was not whether plaintiff sustained a serious injury, but rather what caused it. In that context, it was plain error for the jury not to hear that the judge had sustained plaintiffs' objection to Dr. Markbreiter citing the rear bumper photo as corroborating his opinion as to the minor nature of the impact and the unlikelihood that such an impact could have caused serious injury to plaintiff's spine.

The jury likely accepted Dr. Markbreiter's conclusions regarding mechanism of injury because they came from a medical expert. We therefore conclude the failure of the trial court to sustain plaintiffs' objection on the trial

record resulted in clear prejudice to plaintiffs and was "clearly capable of producing an unjust result." R. 2:10-2.

Because the trial court mistakenly denied plaintiff's the opportunity to provide critical evidence regarding damage sustained by the Grand Marquis without basis, and because of the real prospect that Dr. Markbreiter's improper opinion testimony had an impact on the critical causation issue in the case, a new trial is required. We therefore reverse the no cause judgment and remand for a new trial.

In light of the comments made by the trial judge regarding the testimony and evidence concerning what plaintiff's husband observed at the body shop where the Grand Marquis was repaired, which comments went considerably beyond what was necessary to address the issue at hand and indicated he may have prejudged the issue, we direct that the case proceed to trial before a different judge on remand. See P.T. v. M.S., 325 N.J. Super. 193, 220-21 (App. Div. 1999).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION